Theodore L. BAETENS and Joyce R. Baetens, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

Donald L. BENBOW; Patricia J. Benbow; Daniel W. Cass, Jr.; Barbara Cass; Earl R. Lueckel; Lois E. Lueckel; Frederic E. Saunders; Mary Alice Saunders; William H. Strong; and Ella K. Strong, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

Nos. 84–1471, 84–1830.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 28, 1985.

Decided Dec. 4, 1985.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Gary R. Allen, David I. Pincus (argued), Tax Div., Dept. of Justice, Washington, D.C., Fred T. Goldberg, Jr., Chief Counsel, George M. Sellinger, I.R.S., Washington, D.C., for C.I.R.

Herbert M. August, Southfield, Mich., for Baetens.

Paul R. Stibich, Carmosino and Dacek, James S. Dacek (argued), Cleveland, Ohio, for Benbow, et al.

Before MARTIN and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.

BOYCE F. MARTIN, JR., Circuit Judge.

The Commissioner of Internal Revenue has appealed the tax court's application of section 402(a)(5) of the Internal Revenue Code of 1954, 26 U.S.C. § 402(a)(5), in each of these cases. Section 402(a)(5) provides that employees may receive distributions from qualified trusts related to qualified profit-sharing plans [1] and may reinvest the distributions in certain Individual Retirement Accounts without being taxed on the distributions in the interim.[2] In these cases on appeal, the once qualified plan and trust were no longer qualified at the time of distribution. The question we must decide is whether section 402(a)(5) applies to a distribution from a trust not qualified at the time of distribution though it was qualified at the time of some or all of the employer contributions. The tax court, 82 T.C. 152 (1984), found that section 402(a)(5) applied to distributions from trusts qualified at the time of contribution. We hold that section 402(a)(5) does not apply to such distributions from trusts not qualified at the time of distribution.

In the first of the cases, Stan's Trucking Company established a profit-sharing plan and related trust on April 1, 1966. On March 28, 1967, the Internal Revenue Service issued a determination that the plan was qualified under section 401(a) of the Internal Revenue Code, and the trust was exempt from tax under section 501(a). Stan's Trucking contributed to the plan for the benefit of its employees until March 31, 1973. The plan was terminated on April 30, 1976.

Theodore L. Baetens, an employee and shareholder of Stan's Trucking, received a distribution of $21,077 from the trust on July 1, 1977, which he reinvested in an IRA on July 31, 1977. On November 9, 1977, the IRS issued a proposed adverse determination letter concerning the qualified status of the plan. On March 28, 1979, the IRS issued a final adverse determination letter retroactively disqualifying the plan for tax years ending March 31, 1974 and thereafter. The IRS revoked the plan's qualified status for improper forfeiture of an employee's benefits, a violation of section 401(a)(7). The trust was therefore no longer exempt under section 501(a) and was no longer qualified under section 402(a)(5). The IRS determined that because the plan and trust had not been qualified in 1977 at the time of the distribution, taxpayer Baetens and his wife Joyce Baetens, a party here because she filed a joint federal income tax return with her husband, could not avoid taxation of the $21,077 distribution. The IRS determined that the rollover provision of section 402(a)(5) was not applicable to a distribution from an unqualified trust. As a result, the Baetens were assessed a $7,239.16 deficiency for 1977.

In the second case, Donald L. Benbow, Earl R. Lueckel and William H. Strong

---

**1.** The determination that a profit-sharing plan is qualified under section 401(a) is not specifically a determination that the related trust is qualified. Rather, if a plan is qualified under section 401(a), the related trust is automatically exempt under section 501(a), thus satisfying the definition of "qualified trust" in section 402(a)(5)(D)(iii). The result is that a trust is qualified when the plan is qualified and loses its qualified status automatically when the IRS disqualifies the plan.

**2.** Section 402(a)(5) contains several other requirements such as a sixty-day time limit for reinvestment. These other requirements are clearly met and are not at issue here.

were employees of Electric Cord Sets, Inc. Their wives, Patricia J. Benbow, Lois B. Lueckel and Ella K. Strong, are parties because they filed joint federal income tax returns with their husbands for 1978, the year in question. Electric Cord established a pension plan which the IRS determined to be qualified as of 1959 and 1963 under section 401(a). The related trust was thus exempt under section 501(a) and qualified under section 402(a)(5). On July 18, 1978, Electric Cord terminated the plan as of December 31, 1977. In 1978, the trust was distributed to the plan participants. Benbow, Lueckel and Strong received distributions in 1978 and reinvested them in IRAs. In September of 1979, the IRS issued a preliminary letter proposing revocation of the plan's qualified status. On February 15, 1980, the IRS revoked the plan's qualified status effective January 1, 1976, for discriminating among employees in relation to benefits, a violation of section 401(a)(4). The trust was no longer exempt under 501(a) or qualified for section 402(a)(5) purposes. Electric Cord had contributed a portion of each distribution after the revocation date. The IRS determined that the taxpayers received distributions in 1978 from a nonexempt and therefore an unqualified trust and thus the rollover provisions of section 402(a)(5) were not applicable. The Benbows received a distribution of $2,170 and were assessed a tax deficiency of $542.50. The Lueckels received a distribution of $15,231.13 and were assessed a deficiency of $6,722.11. The Strongs received $10,885 and were assessed a deficiency of $4,558.31.

The taxpayers in each case did not challenge the plan disqualification determination nor did they contest the retroactive nature of the disqualification. Rather, they argued that the tax treatment of the distributions should be determined by the status of the plan and trust at the time of contribution, not the time of distribution. In both cases, the tax court, following prior precedent, accepted the theory of the taxpayers. Under this analysis, a distribution attributable to contributions made while the trust was qualified must be treated as a distribution from a qualified trust. Thus, section 402(a)(5) could be used to reinvest the distribution without taxation. That portion of a distribution attributable to employer contributions made while the plan and trust were not qualified must be taxed as a distribution from an unqualified trust under section 402(b). The saving provision of section 402(a)(5) could not be used as to this portion of the distribution.

Under the tax court's analysis, the entire distribution to the Baetens was from a qualified trust because all of the employer contributions occurred before March 31, 1974, the retroactive day of disqualification of the plan and thus the trust. The distributions to the Benbows, Lueckels and Strongs must be apportioned because Electric Cord continued to contribute to the plan for the benefit of those parties after January 1, 1976, the retroactive day of disqualification. The entire Benbow distribution was attributable to contributions made after the plan and trust were disqualified. Thus, under the theory of the tax court, section 402(a)(5) was not available to them and they would be taxed on the total distribution. Only $1,938.46 of the total Lueckel distribution and $4,036.36 of the Strong distribution was attributable to contributions made after the trust lost its qualified status. The remainder of the distributions were treated as distributions from a qualified trust and were afforded the tax deferral benefits of section 402(a)(5).

These cases place before us the classic conflict of equity and statutory intent. Because, in part, the taxpayers did not cause the disqualification, the tax court expanded the statute to meet the equities of the case. This just was not what Congress intended. Our analysis of section 402(a)(5) begins with the statute:

(5) ROLLOVER AMOUNTS.—

 (A) GENERAL RULE.—If—

 (i) the balance to the credit of an employee in a *qualified trust* is paid to him in a qualifying rollover distribution,

(ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and

(iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,

then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

. . . .

(D) QUALIFIED TRUST.—The term "qualified trust" means an employees' trust described in section 401(a) *which is exempt from tax under section 501(a).*

(emphasis added).

As noted in *Henry T. Patterson by Reeves Banking v. United States,* " 'Congress is presumed to use words in their ordinary sense unless it expressly indicates the contrary.' " *Henry T. Patterson Trust by Reeves Banking v. United States,* 729 F.2d 1089, 1094 (6th Cir.1984) (quoting *Davis Bros., Inc. v. Donovan,* 700 F.2d 1368, 1370 (11th Cir.1983), *reh'g denied and reh'g en banc denied* ). As we read the language of section 402(a)(5), it seems very clear what Congress had in mind. The reinvested distribution must be a distribution from a "qualified trust." Section 402(a)(5)(D)(iii) defines "qualified trust" as a trust "which is exempt from tax under section 501(a)." There is no ambiguity as to when the trust must be exempt. The statute does not say "is or has been exempt." *See Woodson v. Commissioner,* 651 F.2d 1094, 1095 (5th Cir.1981). Rather, the trust must be exempt at the time of distribution. Section 501(a) states that "[a]n organization described in ... section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503." Thus, if a plan *is* qualified under section 401(a), the trust *is* exempt under section 501(a) and therefore *is* a "qualified trust" under section 402(a)(5).

These cases present essentially the same question that was before the Fifth Circuit in *Woodson v. Commissioner,* 651 F.2d 1094 (5th Cir.1981), *rev'g* 73 T.C. 779 (1980): whether distributions from pension or profit-sharing plans that are no longer qualified under section 401(a) can enjoy the favorable treatment accorded to qualified plans. While *Woodson* involved capital gains treatment allowed under section 402(a)(2), that section is applicable only to an "employee trust described in section 401(a), which is exempt from tax under section 501(a)." This is the same language as found in section 402(a)(5). In *Woodson,* the Fifth Circuit reached the same conclusion as we have. The *Woodson* court held that section 402(a)(2) clearly limited capital gains treatment to distributions from employee trusts which were exempt at the time of the distribution. *Woodson,* 651 F.2d at 1095. As an aside, it was noted by the *Woodson* court that a contrary holding would violate treasury regulation section 1.402(a)–1(a)(1)(ii). *Id.* at 1096.

Our analysis is, however, not without a contrary view as held by the Second Circuit in *Greenwald v. Commissioner,* 366 F.2d 538 (2d Cir.1966), *rev'g* 44 T.C. 137 (1965). In *Greenwald,* the taxpayer received a distribution from a profit-sharing trust that at one time had been exempt but which had lost its exempt status at the time of distribution. The court concluded that it would be "harsh" to treat the taxpayer differently from the other employees who had withdrawn from the plan prior to its disqualification. The court stated that such a result was not required by the statute. *Greenwald,* 336 F.2d at 541. Thus, capital gains treatment under section 402(a)(2) was allowed for the portion of the distribution attributable to contributions made while the plan was exempt.

We decline to follow the *Greenwald* decision for two reasons. First, the court rested its decision primarily on its view that the taxability of the transaction was not caused by the taxpayer. Secondly, the *Greenwald* court did not address the treasury regulations which explicitly require the trust to

be exempt in the year of distribution for section 402(a)(2) to apply.

While we recognize, as the tax court and the Second Circuit have, that a fundamental unfairness has occurred, we are bolstered by the analysis of the Seventh Circuit in *Cass v. Commissioner,* 774 F.2d 740 (7th Cir.1985), a case arising from the same plan as that involved in the Benbow, Lueckel and Strong distributions. In *Cass,* the Seventh Circuit followed *Woodson* and rejected *Greenwald,* as we have done.

In *Baetens,* the tax court held that the quoted statutory language was "clear as to the 'what' but not as to the 'when.'" To clarify whether the status determination was to occur at the time of contribution or rather the time of distribution, it looked to section 402(b), which deals with plans not qualified under section 401(a).[3] Section 402(b) provides for a year-by-year determination of status for nonexempt trusts. If a trust becomes exempt after a life as a nonexempt trust, the employee at distribution is not taxed on that part of the distribution that reflects contributions that were taxed when the trust was not exempt. *See* Treas.Reg. § 1.402(a)–1(a)(1)(iv). The tax court determined that a "symmetrical result" required a "harmonizing" of sections 402(a) and (b) so that year-by-year determinations of status are made not only when the trust shifts from nonexempt to exempt status, but also when the trust shifts from exempt to nonexempt status.

Not only is such a conclusion in conflict with the plain and unambiguous language of the statute, but more important, such a result is inconsistent with very clear congressional purpose. We recognize that the tax court is concerned that plan disqualification as a means of policing profit-sharing trusts penalizes innocent taxpayers rather than the culpable officers and shareholders who make the decisions which lead to the disqualification. Here the taxpayers are being punished for actions, not their own,[4] which disqualified the plan. However, it is the role of Congress to remedy this inequitable result. Congress acknowledged its awareness that plan disqualification often punishes innocent parties in its enactment of the Employee Retirement Income Security Act of 1974. In that Act, Congress removed plan disqualification as a sanction for a plan's participation in a prohibited transaction. The Senate Finance Committee explained this change by noting that the prior law's sanctions fell upon innocent employees; therefore, the change would require the parties in interest and fiduciaries who engaged in the prohibited transactions to be sanctioned. S.Rep. No. 383, 93d Cong., 1st Sess. at 94–95, U.S.Code Cong. & Admin.News 1974, p. 4639 (1974–4 C.B. Supp. 80, 173–74).[5] *See* 26 U.S.C. § 503.

3. Section 402(b) states:

(b) TAXABILITY OF BENEFICIARY OF NONEXEMPT TRUST.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. The amount actually distributed or made available to any distributee by any such trust shall be taxable to him in the year in which so distributed or made available, under section 72 (relating to annuities), except that distributions of income of such trust before the annuity starting date (as defined in section 72(c)(4) shall be included in the gross income of the employee without regard to section 72(e)(1) (relating to amount not received as annuities). A beneficiary of any such trust shall not be considered the owner of any portion of such trust under subpart E of part I of subchapter J (relating to grantors and others treated as substantial owners).

4. Though Baetens was an officer and shareholder, there is no evidence that he had any influence on the administration of the plan or trust. The record indicates that none of the three employees of Electric Cord were shareholders or officers during the time in which the disqualifying actions were taken. There is no evidence that they had any decisionmaking authority relating to the plan or trust.

5. The Senate Committee report stated:

Under present law, a trust forming part of a qualified retirement plan loses its exemption

Yet, Congress retained plan disqualification as the penalty for improper forfeiture of an employee's benefits under section 401(a)(7) and for discrimination among employees with respect to benefits under section 401(a)(4)—the grounds for disqualification of the Baetens and Benbow plans respectively.

The legislative history of section 402(a)(5), the specific provision applicable here, further illuminates Congress' thoughts. The purpose of section 402(a)(5) was to facilitate the transfer of the employee's pension when he changed jobs. H.R. Conf.Rep. No. 1280, 93d Cong., 2d Sess. at 341 (1974) (1974–3 C.B. 415, 502). An earlier idea for improving the transfer situation was a central portability fund available only to distributions from qualified plans and therefore exempt trusts. Though the fund was eventually scrapped in favor of the IRA concept, the Senate Finance Committee's discussion of the proposal is enlightening.

> The central fund may receive transfers only from employee benefit plans (or from employees receiving final distributions from these plans) that are qualified under the Internal Revenue Code. If the fund receives notice from the Secretary of the Treasury that a final determination has been made that a plan was not qualified at the time that a transfer was made to the fund, the balance of each participant's account attributable to transfers from that plan (in the year the plan is not qualified) will be paid from the fund to the participant. The amount

paid is to be included in the participant's income in the year it is paid to the participant. This generally follows present law, *since plan participants currently are taxed as receiving ordinary income when they receive transfers from plans which are not qualified in the year of distribution.*

S.Rep. No. 383, 93d Cong., 1st Sess. at 75, U.S.Code Cong. & Admin.News 1974, p. 4959 (1973) (1974–3 C.B.Supp. 80, 154) (emphasis added).

Congressional understanding of the existing law in 1973 supports the position taken by the IRS in the present cases. The section 402(a)(5) benefits are available only to distributions from trusts qualified at the time of distribution. Though the central portability fund was ultimately scuttled, there is no legislative history indicating that the conferees sought to grant an even greater benefit than that allowed under the portability fund. There is no evidence that the conferees intended to allow special treatment under section 402(a)(5) to be available to employees receiving distributions from plans that had lost their qualified status.

The House Committee dealing with the ERISA legislation stated that "[t]he primary purpose of the bill is the protection of individual pension rights." H.R.Rep. No. 533, 93d Cong., 1st Sess. 1, 8 (1973); S.Rep. 383, 93d Cong., 1st Sess. 17 (1973), U.S. Code Cong. & Admin.News 1974, p. 4639.

---

from taxation if it engages in a prohibited transaction. With loss of exemption, special tax benefits relating to qualified plans also may be denied, including deferral of taxation by employees and loss of deductions by employers contributing to the trust. In practice *these sanctions have not been satisfactory in discouraging prohibited transactions....*

In addition, the present law's sanctions for engaging in prohibited transactions tend to fall upon innocent employees. For example, if a trust is disqualified because of an act of the trustee and the employer, the income tax imposed upon a disqualified plan may be paid out of funds otherwise available to provide employees' retirement benefits. Furthermore, because of the prohibited act of an

employer and trustee, an employee may have to pay tax on contributions made on his behalf before he actually receives the amounts attributable to the contributions. This possible loss to innocent employees has caused the Service to be reluctant to impose the sanctions.

To resolve these problems, the committee bill changes the method of enforcing the prohibited transaction rules. It imposed sanctions for prohibited transactions upon the parties in interest and fiduciaries who engage in these transactions in place of the sanctions now imposed on the employee benefit trusts. S.Rep. No. 383, 93d Cong., 1st Sess. at 94–95 (1973), U.S.Code Cong. & Admin.News 1974, p. 4978 (1974–4 C.B.Supp. 80, 173–74).

Through section 402(a)(5), Congress furthered its purpose by providing that distributions from qualified trusts could be rolled over tax free into IRAs, if certain requirements were met. Congress chose to provide this special benefit only to this specific class of plan participants, those who received distributions from plans qualified at the date of distribution.

After determining that section 402(a)(5) applied to distributions from trusts exempt at the date of contribution, a position we believe logically discredited, the *Baetens* tax court held Treasury Regulation section 1.402(a)–1(a)(1)(ii) invalid because it was unreasonable. That regulation states in part that "[t]he provisions of section 402(a) relate only to a distribution by a trust described in section 401(a) which is exempt under section 501(a) for the taxable year of the trust in which the distribution is made."

On its face this regulation appears to us unambiguous and clearly consistent with the language of section 402(a)(5). However, the *Baetens* opinion in the tax court cited treasury regulation section 1.402(a)–1(a)(1)(v), which provides that "[i]f the trust is not exempt at the time the distribution is received by or made available to the employee, see section 402(b) and paragraph (b) of § 1.402(b)–1." The court then referred to treasury regulation section 1.402(b)–1(b)(1) which states in part:

> When an employees' trust that was exempt under section 501(a) ceases to be so exempt, an employee shall include in his gross income only amounts *contributed* to the trust during a taxable year of the employer that ends within or with a taxable year of the trust in which not so exempt (to the same extent as if the trust had not been so exempt in all prior taxable years).

(emphasis added). This regulation deals with the tax treatment of sums contributed to an ongoing exempt trust which becomes nonexempt. It does not deal with the matter at hand, distributions from a trust which has become nonexempt. The more applicable regulation is section 1.402(b)–

1(c)(1), which stated in pertinent part in the tax years at issue:

> Any amount actually distributed or made available to any distributee by an employees' trust which is not exempt under section 501(a) for the taxable year of the trust in which the distribution is made shall be taxable in the year in which so distributed or made available under section 72 (relating to annuities).

This regulation was numbered 1.402(b)–1(b)(1) prior to 1978. Evidently, the Treasury Department did not amend the cross-referencing provision of section 1.402(a)–1(a)(1)(v) and the courts below were directed to the wrong regulations as a result. Regulation sections 1.402(b)–1(c)(1) and 1.402(a)–1(a)(1)(ii) are not inconsistent but rather are quite explicit in the requirement that a distribution from a trust not exempt in the year of distribution is not allowed to take advantage of the tax deferral scheme of section 402(a)(5). Thus, these distributions must be taxed under section 402(b).

The courts generally grant deference to an agency if it can conclude that the regulation "implement[s] the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). *See also United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982); *In re Challenge Stamping & Porcelain Co.*, 719 F.2d 146 (6th Cir.1983). The first determination is whether the regulation is in accord with the statutory language. *Vogel Fertilizer*, 455 U.S. at 25, 102 S.Ct. at 827; *National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979). Here, the statutory language requires that the distributions be made from a trust "which is exempt" at the time of the distributions. Treasury regulation section 1.402(a)–1(a)(1)(ii), which the *Baetens* tax court invalidated, is certainly in harmony with the statutory language. But in addition, the treasury regulation must be in harmony with the statute's origin and purpose. *Vogel Fertilizer*, 455 U.S. at 26, 102 S.Ct. at

828; *Rowan Companies, Inc. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981); *National Muffler Dealers,* 440 U.S. at 477, 99 S.Ct. at 1307; *In re Challenge Stamping and Porcelain Co.,* 719 F.2d at 150. The legislative history of the statute supports the interpretation that the statute allows special tax treatment under section 402(a)(5) only to plan participants who receive distributions from plans and trusts qualified at the time of the distribution. The regulation in question is simply a restatement of this interpretation of the plain meaning of the statute. *See Woodson v. Commissioner,* 651 F.2d at 1096.

The taxpayers here acknowledge that our interpretation that a distribution from a trust that has lost its exempt status cannot be rolled over tax-free into an IRA as provided by section 402(a)(5) subjects them to a harsh result. They argue that they must pay a much larger tax because the distribution of the contributions is made in one lump sum. They argue that this amount exceeds the tax they would have paid had they been taxed on the contributions directly as income in the year of contribution. However, they were able to defer taxation of their share of the plan until distribution. Some taxpayers might prefer tax deferral even if it means bunched income and thus a large tax bill later. Our decision simply does not allow a further deferral under the rollover provision.[6]

The strongest argument made by the taxpayers is that they, as employees, should not be penalized for the plan disqualification, but rather that the officers and fiduciaries making decisions regarding the plan should be penalized. While we sympathize with the plight of these taxpayers, the harsh effect they claim is a result of Congress' legislative prerogative. Congress has clearly stated in section 402(a)(5) that distributions that are reinvested in IRAs deserve no preferential tax treatment unless they are distributions from qualified plans and trusts. The legislative history of section 402(a)(5) supports this view and the regulations are consistent with the statute and its history. As the Seventh Circuit stated in *Estate of Cowser v. Commissioner,* 736 F.2d 1168, 1171 (7th Cir.1984), "[w]e may not agree with where the line is drawn, but we are not in a position to move it."

Accordingly, the judgments of the tax court are reversed and the cases remanded for further proceedings to determine the precise taxes due.

---

**6.** Income averaging may be available to these taxpayers to further reduce their tax burden.

*See* Treas.Reg. § 1.402(b)–1(c)(1), which sets forth averaging eligibility requirements.