**In re Richard M. GROFF, Debtor.**

**Bankruptcy No. 96–15070–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Feb. 19, 1999.

Jeffrey Leasure, Ft. Myers, FL, for Debtor.

Diane L. Jensen, Ft. Myers, FL, Trustee.

Alan P. Woodruff, Cape Coral, FL, for Trustees.

## ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 case is the Trustee's Objection to Debtor's Claim of Exemptions, specifically, the objection to the Debtor's claim that the funds rolled over into his investment retirement account from his Simplified Employee Pension Plan are exempt property pursuant to Florida Statute § 222.21. Upon conducting a final evidentiary hearing and considering the record, including the parties' stipulated facts, this Court now finds and concludes as follows:

Sometime prior to 1989, the Debtor was the President, sole director and 85% shareholder of Richard M. Groff & Associates, Inc. (RMGA), an Indiana Corporation. In 1989, RMGA established and adopted the Putnam Prototype Simplified Employee Pension Plan and Contribution Agreement, which is a Salary Reduction Simplified Employee Agreement (SARSEP) governed by Section 408(k) of the Internal Revenue Code. In 1989, the Debtor executed a Salary Reduction Agreement providing for 3% of his compensation to be contributed to the SARSEP, and did not thereafter execute any other Salary Reduction Agreement. The Debtor participated in that plan from 1989 until 1995. In 1995, the entire balance of the SARSEP Money Market Account ($68,060.54) was transferred into the Debtor's IRA Money Market Account, which on the date of the Debtor's filing had a balance of $427,-117.56.

The many arguments asserted by the Trustee in this matter can essentially be categorized into three main contentions. First, the Trustee argues that the exemption provided by Florida Statute § 222.21(2)(a) does not include individual retirement accounts and, regardless, that § 222.21(2)(a) is preempted by ERISA. However, this Court has already recognized that Florida Statute § 222.21(2)(a) does apply to IRAs and has not been preempted by ERISA. *See In re Francisco*, 204 B.R. 799 (Bankr.M.D.Fla.1996); *In re Schlein*, 8 F.3d 745 (11th Cir.1993).

Second, the Trustee contends that the Debtor's IRA became nonqualified under Florida Statute § 222.21(2)(a) due to the rollover of funds from the Debtor's allegedly nonqualified SAPSEP. Florida Statute § 222.21(2)(a) states:

[A]ny money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408 or s. 409 of the Internal Revenue code, as amended, is exempt from the claims of creditors of the participant or beneficiary.

Thus, by the Statute's express terms, a prerequisite to an allowable exemption under this Section is that the retirement plan be qualified for a tax exemption under Sections 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code.

As recently recognized by this court, an otherwise qualified IRA becomes disqualified if it contains funds transferred from a non-qualified plan. *See In re Banderas*, Case No. 97–16392–9P7 (Bankr. M.D.Fla.1998) (holding that an IRA with assets from a profit sharing plan did not qualify for tax exemption because the plan was not formed by the employer for the exclusive benefit of the employees, as required by § 401(a) of the Internal Revenue Code, since there were no employees); *see also Baetens v. Commissioner*, 777 F.2d 1160, 1167 (6th Cir.1985) (holding that an IRA is not tax exempt, even if it is otherwise qualified under the Internal Revenue Code, if the funds in the IRA were transferred from a non-qualified plan).

However, although the courts have found an otherwise qualified IRA can become nonqualified via the rollover of funds from a nonqualified plan, the key issue in this matter is whether the Debtor's SAR-

SAP was in fact nonqualified—and the burden is on the Trustee to establish that fact. *See In re Ehnle,* 124 B.R. 361 (Bankr.M.D.Fla.1991).

The allegedly non-qualified plan at issue in this matter—the SARSEP—is a type of IRA defined in IRC § 408(k). Specifically, an SEP is a simplified employee pension, and an SARSEP is a Salary Reduction SEP, which is an arrangement an employee may elect under § 408(k)(6). Thus, the Trustee's respective arguments that the plan is non-qualified must be considered with reference to the requirements listed in § 408(k) as well as the actual plan documents and RMGA records provided by the parties in this matter.

█ In deciding whether an IRA is "qualified" under the IRC, such that a debtor's interest in a plan will be exempt per F.S. 222.21, the court looks at both the form and operation of the plan. *See In re Blais,* 220 B.R. 485, 488 (S.D.Fla.1997). In this matter, the Trustee argues the Debtor's SARSEP was non-qualified both in form and operation.

The Trustee argues the SARSEP was form disqualified because: 1) the Plan was never amended to conform with the IRC qualification requirements; and 2) it never contained the provisions required by IRC § 408(k)(5)—specifically that the contributions under the plan be made under a written allocation formula—and, additionally, that the plan had impermissible "matching" employer contributions that were not in the Plan document.

█ Regarding the amendment issue, the parties stipulated that when the SARSEP was established in 1989 using the Putnam Securities Master prototype form, the plan document contained a clause providing for contributions to be based on compensation up to $200,000. However, in 1994, the Internal Revenue Code was amended to limit the compensation considered in determining plan contributions and elective deferrals to $150,000. The dispute therefore arises over a clause in the SAR-

SEP (Exhibit 9, Paragraph 13) that delegated the required amendments to the prototype plan administrator, stating,

> The Employer delegates to the Sponsor (Putnam) the power to amend the Contribution . Agreement and the Plan Terms. The sponsor shall notice the Employer of any such amendment, and the Employer shall be deemed to have consented to such amendment if the Employer does not otherwise notify the sponsor in writing within 30 days after notification has been given to the Employer.

According to the affidavit of Scott Smith, Putnam's technical coordinator, the SARSEP Prototype Plan adopted by RMGA "has been maintained and amended as necessary to remain in compliance with provisions set forth in IRS Form 5305 A–SEP." Thus, the Debtor relies on the fact that the Prototype plan was amended, and it is stipulated that the Debtor's particular plan was not amended per the delegation clause. Accordingly, the Trustee argues that, assuming Mr. Smith's statement that the prototype was amended to be true, there is no evidence that the amendment was ever submitted to RMGA as the Plan requires.

The Trustee argues that IRS Revenue Procedure 89–9, 1989–1 C.B. 780 states that the amendment of a prototype plan does not constitute an amendment of the plan of an adopting employer unless the employer also adopts the amendment. The Trustee points out that in *Gallagher v. Park West Bank,* 921 F.Supp. 867 (D.C.Mass.1996), the court cited this revenue procedure and held that the actual plan must be amended, not just the prototype. Moreover, the Bankruptcy court in *In re Swift* also held that failure to amend a plan resulted in its disqualification. *See* 124 B.R. 475, 483–86 (Bankr.W.D.Tex. 1991).

Accordingly, the amendment argument appears to be the strongest for the Trustee. However, while the Trustee alleges

there is no evidence that RMGA received notice of the prototype plan's amendment, the Trustee fails to meet her burden of proving that no such notice was received or adopted via the terms of the deferral provision. Moreover, neither *Gallagher* nor *Smith* are directly on point with this matter and thus do not appear to equivocally state a rule invalidating the deferral procedure used by Putnam and RMGA. Furthermore, regarding whether the IRS required RMGA's plan actually have been amended in addition to its prototype, Revenue Procedure 89–9 does not appear to clearly indicate what the Trustee alleges—rather, it generally requires that an employer "adopt" an approved replacement plan within a certain time period. Thus, given the language of the deferral provision in this matter, the law does not appear to disqualify provisions such as the amendment deferral provision in the RMGA plan nor has the Trustee shown that RMGA did not adopt the amendments via the terms of that provision.

The Trustee's other arguments regarding form nonqualification do not appear to have merit. Specifically, the Trustee argues that the SARSEP was form nonqualified because it did not include the written contribution formula required by § 408(k)(5) and also included "matching" contributions that were improperly determined by reference to employee's salary reduction deferrals. However, the RMGA documents provided by both parties—specifically the records of the RMGA SAP/SEP plan (Exhibit 8) as well as the subsequent affidavit of Mr. Kolodziej—indicate that the same percentage of employer contribution was contributed by RMGA to each employee.

 The Trustee's second line of argument regarding nonqualification is that the SARSEP was operationally nonqualified because: 1) the Plan was not administered according to its terms; and 2) it permitted the Debtor to make "elective deferrals" without prior execution of a written Salary Deferral Election. However, the Trustee again fails to carry her burden to specifically demonstrate how the RMGA documents prove such contentions because it is impossible to determine with sufficient clarity from the record as established that the plan was not administered according to its terms.

Finally, the Trustee argues that the IRA was disqualified because the Debtor engaged in prohibited transactions when he improperly distributed an interest to his former wife without the benefit of a qualified domestic relations order. However, IRC § 408(d)(6) indicates that a qualified domestic relations order is not required for such a distribution, and thus this final argument is also without merit.

Based on the foregoing, this Court finds that the assets of the IRA are exempt property of the estate because the funds in the SARSEP that were subsequently rolled over to the IRA Profit Sharing Plan are qualified for a tax exemption under IRC § 408(k), and in turn, by Florida Statute § 222.21(2)(a).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection to Exemption is hereby overruled. The IRA and the Profit Sharing Plan are hereby determined to be exempt property of the estate not subject to administration by the Trustee.