**In re James PARKER, Debtor.**

**Bankruptcy No. 3–90–02688.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Aug. 10, 1990.

Jeffrey P. Albert, Dayton, Ohio, for James Parker.

Linda S. Stukey, Dayton, Ohio, for Tamara Parker.

George W. Ledford, Englewood, Ohio, Chapter 13 Trustee.

### DECISION AND ORDER OF CONDITIONAL DISMISSAL AND RELIEF FROM STAY

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court in the bankruptcy case referred to this court by the standing order of reference entered in this district and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), confirmation of plans.

The court is authorized to enter a final judgment. The following opinion constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

In reaching the decision the court has considered the demeanor and credibility of the witnesses and has examined the movant's exhibits admitted into evidence as Exhibits A, B, C, D, E, F, I, L, M, N, O, P, Q, R, V, and X. Supplemental material was sent to the court by counsel for Tamara Parker and by counsel for debtor but was not considered because it was not evidence introduced at the trial.

The court has considered cases dealing with good faith in confirmation of chapter 13 plans. The cases reviewed were *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir. 1988) and *In re Caldwell,* 895 F.2d 1123 (6th Cir.1990).

Tamara Parker has objected to the confirmation of the plan and to the debtor's schedules of property alleging that the debtor failed to disclose additional assets.

The central issue for determination is whether the plan proposed by the debtor complies with the good faith requirement of 11 U.S.C. § 1325(a)(3).

Debtor's counsel acknowledged that because there has been a small increase in pay since the filing of the petition and the custody of children has changed, the debtor will file amendments to his schedules and a new statement of income and expenses.

Tamara Parker and James Parker, the debtor, are former husband and wife. They remain parties to a divorce case in which the final decree of divorce was granted and the questions of alimony, child support and property division have not been finally determined. The parties entered an agreement as to the division of the marital residence after months of negotiation. The divorce case is pending in the Montgomery County Common Pleas Court. An appeal from a judgment for malicious prosecution is pending in the Court of Appeals for Montgomery County, Ohio.

From the evidence it is obvious the divorce case and the attempts at alimony, property division and custody of children were unusually acrimonious. Having heard the testimony and observed the conduct of the parties and counsel, the court is chagrined that a divorce action has so adversely affected the lives of James Parker and Tamara Parker, and no doubt, of their children, ages 10, 7 and 5. Informal agreements were made for change of custody and in June 1990 the court granted legal custody of the children to Tamara Parker. The parties jointly owned a residence over which the parties disputed for about 15 months until Tamara Parker in December, 1989 transferred her interest to James Parker for $9,200, thus settling her $20,000 equity from inherited money she had paid for the residence. James Parker and his attorney had filed an ill advised eviction action against Tamara Parker in early 1989 to which Tamara Parker filed a counterclaim for malicious prosecution. Although the eviction action was later voluntarily dismissed, the counterclaim for malicious prosecution proceeded to a default judgment against James Parker in the fall of 1989 and a damage judgment dated May 17, 1990. The judgment was for compensatory damages of $1,000, punitive damages of $5,000 and attorney fees of more than $8,000. The judgment of $13,856.68 is now under appeal.

Tamara Parker promptly took aggressive actions to collect her judgment. She filed a certificate of judgment against real estate, an unsuccessful garnishment of bank accounts and a levy of execution upon a 1988 Pontiac Bonneville automobile. The efforts to collect the judgment led to James Parker filing this chapter 13 bankruptcy in which the claim for the judgment is listed as "zero" and disputed.

James Parker contends that the filing of the eviction action in County Court and his other attempts in the Domestic Relations Court to evict Tamara Parker from the residence were taken as tactical methods of obtaining a property division and were actions taken upon advice of his counsel. He has spoken with two attorneys concerning a possible malpractice action against the attorney in the divorce case who recommended the eviction action. That attorney

filed the notice of appeal from the money judgment which now pends in the state Court of Appeals.

The debtor's schedules reveal that his only debts are his first and second mortgages, the disputed Tamara Parker judgment, a Sears account of $2,000 and the $10,000 owing on the 1988 Pontiac Bonneville. The debtor's total monthly income is in excess of $2,643. The plan provides for no payment for the Tamara Parker judgment and 100% to the other creditors.

The Domestic Relations Court has not entered a clear, definitive order for child support or alimony. Tamara Parker quit her job in the summer of 1989 when she feared for her life in the neighborhoods she traveled in her work. It is clear that each of the parties has spent excessive funds for attorney fees in contesting the issues in the unfortunate divorce action.

Although the divorce court had ordered more than $913 per month as temporary alimony, the debtor discontinued paying any support after his final divorce was granted on his belief that the temporary order was no longer effective. Tamara Parker contends she was forced to agree to the transfer of the property for $9200 in order to obtain funds in December, 1989.

The custody was first granted to James Parker, the father, but upon appeal the question was remanded to the Domestic Relations Court. The court on June 1, 1990 granted custody to the mother, Tamara Parker, but did not address the property division, alimony and child support matters. It is unclear to the parties and the attorneys disagree on whether the temporary order as to child support is in effect. The alimony and child support issues must be resolved in the Domestic Relations Court, for which relief from the automatic stay has been granted.

The matter of custody was a bitter issue throughout the divorce. Even though agreements were made to informally change the custody, under color of court orders, each party took the children from the other without notice. The father took the children on March 6, 1989 (Exhibit A) under color of the legal custody, and the mother, Tamara Parker, took the children from the father on June 15, 1990, under the color of legal custody granted to her in an order entered by the Common Pleas Court after the remand from the Court of Appeals.

From all the evidence it is clear that James Parker, who was working constantly at his comfortably paying position at General Motors Corporation, had the stronger bargaining power for the property settlement which was agreed to by the parties. In the summer of 1989 Tamara Parker, the mother, quit her job under great pressure, after having the children taken from her, and fearful for her safety in her job with the Montgomery County Health Department because of the neighborhoods in which she was required to work.

James Parker acknowledged that in early 1989 an attorney suggested he attempt eviction of Tamara Parker from the home as a means of forcing Tamara Parker to "deal" in a buy out or compromise of her claim to the equity in the home. Her main equity was a $20,000 inheritance she used as an investment in the home. The threat of eviction had been used at other times in the Domestic Relations Court. The eviction action led to the counterclaim and subsequent judgment for malicious prosecution from the Common Pleas Court. Under these facts, the court must consider the matter of good faith under 11 U.S.C. § 1325(a)(3).

The court in *In re Okoreeh–Baah* put the matter well when it stated:

Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be

left simply to the bankruptcy court's common sense and judgment. 836 F.2d at 1033.

To this end this court will consider the "totality of the circumstances" as espoused by the court in *In re Okoreeh–Baah*. The recent case of *In re Caldwell* set out a twelve part test to use in reviewing the total circumstances to determine whether a debtor's chapter 13 plan is proposed in good faith. Those criteria are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code. 895 F.2d at 1126.

As to the fourth part of the test, the testimony revealed that there were certain discrepancies and inaccuracies in the schedules which could possibly be characterized as an attempt to mislead the court, but the discrepancies are not great. As to the fifth part of the test there is an attempt at preferential treatment between creditors because the plan intentionally fails to recognize the amount of the presently valid judgment debt. The seventh part of the test concerning the dischargeability of judgment debt in chapter 7 is pertinent because the malicious prosecution judgment must be recognized as a nondischargeable debt unless it is overturned on appeal. The tenth part of the test is the apparent key to this case in that the motivation and sincerity of the debtor in seeking chapter 13 relief must be reviewed.

This debtor does not recognize that he owes a judgment to his wife and stated he will not pay anything to her on that judgment. His stated basis was "he does not think he owes it." This state of mind has existed for months as shown by his treatment of his former wife during the divorce litigation.

During the convoluted actions taken in the Domestic Relations Court and the eviction action which led to the judgment against him, James Parker demonstrated a singular meanness of spirit in his treatment of his former wife. He justified his refusal to follow divorce court decisions when to comply with them was adverse to his interests. He interpreted the court's decisions and orders requiring him to pay monthly expenses to or for his wife and children as terminated on the issuance of the final decree, regardless of the need his wife had for living expenses.

The evidence is clear that the debtor fails the 12th part of the test as to whether he is attempting to abuse the spirit of the Bankruptcy Code. The debtor acted in an egregious manner during the course of the divorce action. He twice unsuccessfully attempted to evict his wife from the home, used all of his economic leverage against his former wife in pursuing a "buy out" of the residence, used the children to inflict further anguish upon his former wife, and compounded his invectiveness by refusing to pay any child support for his children since mid-June 1990.

The proposed plan is for a period of 39 months, only 3 months longer than the minimum statutory requirement. The debtor, of course, is not required to propose a plan for longer than 36 months, but

"the length of repayment is a relevant indicator of the debtor's good faith ... and is one more factor which suggests ... that [the debtor] is not sincere." *In re Caldwell, supra,* 895 F.2d at 1127.

Overall the court finds the debtor does not sincerely intend to repay all of his prepetition debts. In fact he proposes to pay no part of the judgment held by Tamara Parker. Despite the fact that a judgment was rendered against him, a certificate of judgment was filed, and his car was levied upon, the debtor listed the claim owing to his wife as being "zero." Even if a debt is disputed, it is not proper to list the amount of an established debt as zero. Although the possibility exists that the judgment may eventually be reversed in the state court of appeals, at this time there is a valid judgment against the debtor, and the filing of a sworn statement that the claim of Tamara Parker is zero is indefensible. If the scheduling of this debt was on advice of counsel, counsel is cautioned that such blatant inaccuracy will not be condoned in a debtor's schedules.

In summary, the following facts lead this court to the inescapable conclusion that the debtor has not proposed his chapter 13 plan in good faith:

1) the debtor's egregious prepetition conduct;

2) the lack of a sincerely-intended plan for repayment of debt;

3) the duration of the plan;

4) the inaccurate scheduling of the debt owing to Tamara Parker;

5) the attempt to discharge a debt that would be nondischargeable (at the present time) in a chapter 7 proceeding; and

6) the attempt to abuse the spirit of the Bankruptcy Code, which requires a debtor's honest attempt at repayment of debt.

Normally, the court would at this time simply dismiss the case. However, because the economic and psychological resources of Tamara Parker appear to have been exhausted during her lengthy judicial ordeal with the debtor, she may in fact prefer to receive payment through a chapter 13 plan rather than the attempting to enforce her judgment through a lengthy series of attachments, levies of execution, garnishments, or foreclosure. If she is not interested in participating in a chapter 13 plan, then she needs to inform the court and the debtor's bankruptcy petition will be dismissed.

In the event that Tamara Parker is interested in receiving a distribution through a chapter 13 plan, then a settlement between Tamara Parker and the debtor will have to be reached. The court observes that the debtor's house has been valued by him as having a fair market value of $100,000 with mortgages totaling $83,000. Therefore, any confirmable plan would have to propose to pay unsecured creditors *at least* $12,000 ($17,000 equity — $5,000 exemption).

In any case, because of the unusual situation relating to the Tamara Parker claim, the court is willing to withhold its dismissal of the debtor's case and to consider a proposed modification of the debtor's plan *if, and only if,* Tamara Parker agrees to the modification. The debtor should be forewarned that should a modified plan be confirmed, it is extremely unlikely that the court would approve any subsequent modification to reduce payments under the plan without an extreme change in circumstances being shown.

It is ORDERED that unless a proposed modification of the debtor's plan has been filed by the debtor and agreed to by Tamara Parker within 30 days of this decision, the debtor's petition will be dismissed.

It is further ORDERED that if within the next 30 days Tamara Parker files a statement with the court that she is not willing to participate in the debtor's chapter 13 plan, the debtor's petition will be dismissed.

Relief from the automatic stay will be granted to Tamara Parker by separate order so that the appeal of the judgment against debtor may proceed to a decision in the Court of Appeals for Montgomery County, Ohio.

IT IS SO ORDERED.