**In re David Martin SWIFT, Debtor.**

**Bankruptcy No. 90-51894-C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 15, 1991.

Michael G. Colvard, San Antonio, Charles A. Ruesink, Berry D. Spears, Austin, for plaintiff.

Martin W. Seidler, San Antonio, Trustee.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the Trustee's Objection to Debtor's Claim of Exemptions and Amended Claim of Exemptions, GNA Life Insurance Companies Joinder Objection to Debtor's Claim of Exemptions and The Bank of San Antonio's Joinder Objection and Supplemental Objection to Debtor's Claim of Exemptions and Amended Claim of Exemptions. Also heard was Debtor's Motion to Avoid Judicial Liens, Debtor's Motion for More Definite Statement, and Debtor's Motion for Summary Judgment. Upon consideration of the evidence presented, the arguments of counsel and the pleadings in the matter, the court enters this its decision disposing of all of these matters.

## JURISDICTION

This court has original subject matter jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b) and may enter a final orders with respect thereto. 28 U.S.C. § 157(c)(2). These matters are core proceedings. 28 U.S.C. §§ 157(b)(2)(B) and (K).

## PROCEDURAL AND FACTUAL BACKGROUND

There are a variety of issues in this proceeding all relating to the exemption of certain types of property belonging to the debtor. Three parties have joined objections against the debtor's claim of exemptions, the Bank of San Antonio ("Bank-SA"), GNA Life Insurance Company ("GNA"), and Marsha G. Kocurek, Trustee ("Trustee") (all hereinafter referred to as "Movants"). All the objections will therefore be discussed as if originally brought by each individual party, though the court's ruling on the various exemption issues will affect all of the Movants equally.

David Marvin Swift filed for Chapter 7 relief on March 1, 1990, in Austin, Texas. The debtor was an insurance agent for State Farm Insurance Company and had his office in San Antonio.[1] The trustee filed objections to the debtor's exemptions but, before those objections were heard, the case was transferred to the San Antonio division, where the debtor lives. Thereafter, the other movants joined in the trustee's objections to exemptions. The debtor in turn filed a motion to avoid those creditors' judicial liens on his homestead.

The debtor was divorced in 1989. Pursuant to the divorce decree, the homestead (which they had jointly acquired during the marriage) was awarded to the husband while another house was given to his ex-wife. In the decree, the debtor granted an interest or lien (the characterization is disputed) in his homestead to his former wife, agreeing that, should the other house not yield at least $98,000 upon sale netting at least $82,500.00 to her, she could then recover any shortfall out of the homestead (whenever it was sold). Movants assert that the ex-wife's interest in the homestead is not protected by the debtor's claimed homestead exemption and is therefore subject to attachment. They claim that the debtor is trying to use his own bankruptcy to shelter his ex-wife's interest in the property. The debtor rejects this characterization and has responded with his motion to avoid the creditors' liens.

The debtor is claiming a number of items of personal property as exempt under Texas' personal property exemptions, including a Rolex watch, a Chevrolet Suburban, and

---

**1.** The debtor took advantage of recent changes in federal law which abolished so-called "divi- sional venue."

his interest in certain insurance policies. Tex.Prop.Code, § 42.002 (Vernon Supp. 1990). In addition, he is claiming certain furniture, fixtures and equipment as exempt under the "tools of the trade" provisions of Section 42.002(3)(B). Finally, he claims his Individual Retirement Account as exempt under Section 42.0021 of the Property Code.

All parties acknowledge that the debtor is eligible to claim up to $30,000.00 in exempt personal property. Tex.Prop.Code, § 42.001(a). The exemption claims are otherwise being contested on a variety of grounds by the Movants. They contend that the furniture, fixtures and equipment do not qualify as tools of the trade, that the Rolex watch is worth more than the debtor contends in his schedules, that the insurance policies have cash surrender value, and that the IRA is not qualified for exemption because it was "rolled over" from a non-qualified Keogh plan. In addition, they argue that the debtor's pre-bankruptcy planning betrays an intention to hinder, delay or defraud his creditors, so that the exemptions should be disqualified under applicable Texas law.

## ANALYSIS

A. *The debtor's motion for partial summary judgement.*

Debtor is requesting partial summary judgment on the objections to exemptions based upon Bankruptcy Rule 4003(b), claiming that the trustee's objection was filed outside of the allowable time frame (that is, not within 30 days after the § 341 meeting). The trustee timely objected to

the lack of detail in the debtor's original schedules. For example, debtor defined jewelry in his original schedules but did not include a Rolex watch in that definition.[2] When the watch was disclosed in the amended schedules the trustee then objected to its value. The debtor argues that the new objection was time-barred because it was not raised in the original objection.

The debtor relies on *In re Payton,* a decision by Judge Kelly of this district, which holds that parties who fail to timely object to originally filed exemptions are barred from objecting to the amendments. *In re Payton,* 73 B.R. 31, 33 (Bankr.W.D.Tex.1987). Debtor's reliance on *Payton* is misplaced. The trustee filed a timely objection in this instance, but that objection was never heard or ruled on because of the divisional transfer. In the interim, the debtor amended his schedules in anticipated response to the trustee's objections. The trustee then *amended* her original objections to respond to the amended schedules. Under standard principles of pleading, an amended pleading in pending litigation relates back to and supersedes the original pleading. Fed.R.Civ.P. 15(c). The amended pleading was thus timely and is not barred by the rule announced in *Payton.*[3]

In any event, debtor should not be rewarded for filing vague schedules which tended to obfuscate legitimately objectionable claims. The watch, for example, was hidden under the general term of "jewelry." The plain truth is that the trustee's timely objection to the lack of detail in the original schedules was the only way to

---

2. The only item of property left in issue on this motion for partial summary judgement is the Rolex watch. The parties have agreed that the debtor is entitled to $30,000.00 in personal property exemptions. The suburban is allowed as exempt property. Based upon a review of record, the trustee timely objected to the IRA, insurance policies and furniture, fixture and equipment.

3. Other creditors filed objections to the debtor's exemptions as well. The debtor did not attack these objections in his motion for summary judgment. They would withstand such an attack however, even though they were filed out of time. These objections do not raise addition-

al grounds but merely join the trustee's objections. They ought more properly to have been denominated as joinders, for that is what they really are. No prejudice resulted from their joinder, as no new issues were raised nor did their joinder delay the adjudication of the issues. While the trustee certainly represents their interests in this bankruptcy, these creditors are nonetheless interested parties in their own right as well. While they may not have an affirmative *right* to join in the trustee's action, there is also no error in *permitting* them to do so. Their joinder would therefore be permitted to stand.

flush out the disclosure that led to the amended objection. The trustee could not have known about the value placed on the watch from a review of the original schedules because the watch was not even listed. The *Payton* rule was never intended to encourage such tomfoolery. Debtor's motion for partial summary judgment is denied.

B. *The debtor's motion for a more definite statement.*

■ The debtor moved for a more definite statement with respect to the Trustee's and GNA's objection to debtor's claim and amended claim of exemptions. Debtor is seeking a ruling under Rule 12(e) of the Federal Rules of Civil Procedure (made applicable in bankruptcy by virtue of Bankruptcy Rule 9014 and 7012) which provides, in relevant part:

"**Motion For More Definite Statement.** If a pleading is ... so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall set out the defects complained of and the details desired...."

Rule 12(e), Fed.R.Civ.P. "Pretrial procedures such as ... the motion for a more definite statement are the appropriate devices to narrow the issues and disclose the boundaries of the claim and defense." *Williams v. United Credit Plan of Chalmette, Inc.,* 526 F.2d 713, 714 (5th Cir. 1976); *McDougall v. Donovan,* 552 F.Supp. 1206 (D.C.Ill.1982) (standard for granting motion for a more definite statement is whether complaint is so vague that party cannot reasonably be required to frame a responsive pleading); *Cox v. Maine Maritime Academy,* 122 F.R.D. 115 (D.Me.1988) (motions for a more definite statement are designed to strike at the unintelligible rather than the lack of detail in a complaint).

The debtor's motion is flawed in that it does not set out the defects complained of nor does it set out the details that are desired in any degree of specificity that would allow the court to make a ruling.

All parties have gone forward without a ruling on this motion in any event, and all the relevant issues have already been tried to this court. The court can justifiably conclude that the issues were in fact narrowly defined and that the boundaries of the claim and defenses were adequately plead in accordance with the Federal Rules of Civil Procedure and Fifth Circuit case law. In essence, the debtor already knew and had, in fact, known for some time the exact issues in controversy. Therefore, the debtor's motion for a more definite statement is groundless and is denied.

C. *The objections to exemptions.*

We turn now to the various objections raised by the movants to the debtor's exemption claims.

1. Office furniture, fixtures and equipment.

■ The debtor claims an exemption for office furniture, fixtures and equipment. *See* Tex.Prop.Code, § 42.002(3)(B). The precise wording of the statute invoked by the debtor is "tools, equipment, books and apparatus ... used in a trade or business." Tex.Prop.Code § 42.002(3)(B). "[This] exemption does not cover everything that is useful in a business but only items that are peculiarly adapted to a trade or business." *In re Leva,* 96 B.R. 723, 739 (Bankr.W.D. Tex.1989) (quoting *In re Weiss,* 92 B.R. 677, 679 (Bankr.N.D.Tex.1988). The "exemption must be of tools or apparatus fairly belonging to or usable in the trade, ... it may not be extended to articles such as furniture and fixtures and other equipment which have a merely general value and use in setting up a business establishment." *Meritz v. Palmer,* 266 F.2d 265, 268 (5th Cir.1959); *see Segraves v. Weitzel,* 734 S.W.2d 773, 776 (Tex.App.—Ft. Worth 1987, no writ) (exemption does not extend to articles such as furniture, fixtures and other equipment having a mere general value used in setting up a business). None of the equipment, furniture or fixtures here claimed as exempt (consisting of typewriters, desks, chairs, paintings, cabinets, a fax machine, calculators, a copier and a phone system) are peculiarly adapted to an

insurance business. Such equipment merely has a general value that is not unique to debtor's business. Any business could use this equipment.

■ Debtor's assertion that this equipment, furniture and fixtures are *needed* to carry on his business at a certain level of productivity is not enough to show that the items are *peculiarly adapted* to his trade or business. *In re Leva*, 96 B.R. at 739; *In re Weiss*, 92 B.R. at 679. Accordingly, debtor's claim of exemption in these items of personal property is disallowed.

### 2. The computer equipment.

■ A computer system owned by State Farm Insurance was apparently included in valuing the debtor's exemptions. "An exemption is a right given by law to a debtor to retain a portion of *his property* free from the claims of creditors." *Pickens v. Pickens*, 125 Tex. 410, 83 S.W.2d 951, 954 (1935) (emphasis added). This computer system is the property of State Farm Insurance. Because it is not the property of the debtor, it may not be included in the debtor's exemptions. Accordingly, the value of the computer system is not counted toward the total value of debtor's allowed exemptions.

### 3. The valuation of the Rolex watch.

No one has here contested that the debtor's watch may be claimed as exempt under Texas' exemption statute. *See In re Leva*, 96 B.R. 723, 736 (Bankr.W.D.Tex.1989). However, the parties do dispute how much the watch is worth, a question that affects the overall amount of personal property the debtor can claim as exempt under the statute. Tex.Prop.Code, § 42.001.

■ The standard for valuing the Rolex watch is its fair market value and not its liquidation value. *In re Mitchell*, 103 B.R. 819, 824 (Bankr.W.D.Tex.1989) ("the appropriate valuation standard is ... 'fair market value,' incorporating as it does an exposure of the item to the appropriate marketplace"). All parties stipulated that Mr. Bill Thompson was an expert whose opinion could be used in valuing the watch (as well as the other personal property involved in this case). Thompson placed the fair market value of the watch at $6,000.00. The debtor's attempts to impeach this valuation with liquidation values are unpersuasive and there was no other persuasive evidence in the record to the contrary.[4] The value of the Rolex watch is found to be $6,000.00.

### 4. Whether non-exempt personalty was converted to exempt personalty in violation of § 42.004(a).

Movants attack the propriety of debtor's exemption claims based on Section 42.004(a) of the Texas statute. They charge that the myriad of transactions among the debtor, his ex-wife and children just days before the petition in bankruptcy coupled with the debtor's shifting of property, his pay-down of certain debts and his choice of divisional venue all point to an intent on the debtor's part to hinder, delay or defraud his creditors. On February 26, 1990, just two days before the bankruptcy filing, the debtor "borrowed" $9,500.00 from his former wife and another $9,500.00 from his daughter (who is in her early twenties), taking back notes secured by a variety of collateral including the above-discussed furniture, fixtures and equipment, as well as the Rolex watch and the Chevrolet Suburban. He used part of the proceeds to pay his lawyer and his accountant, but some of the money was applied to pay down his purchase money note on the Suburban.[5] In his testimony, debtor at one point could not remember where he had spent any of the money. At another, he could account for only part of it. Debtor

---

**4.** There was a general averment by David Swift that he had "checked around" in order to arrive at the value that he ultimately assigned to the watch in his schedules. The court excluded those averments as inadmissable hearsay. The court did admit the value Swift had placed in his schedules, however, because the schedules are filed under penalty of perjury, giving them some incidence of credibility.

**5.** Movants also attack the debtor's manipulation of his retirement funds. That issue is discussed more fully below in the next section.

was also unable to explain how his ex-wife and daughter came into such large sums of money to loan him in the first place.

Section 42.004(a) of the Texas Property Code states that "[i]f a party uses property not exempt ... to acquire eligible personal property or an interest in eligible personal property or to make improvements or pay indebtedness on eligible personal property, with the intent to defraud, delay or hinder an interested person from obtaining that to which the interested person is or may be entitled, the property, interest or improvement acquired is not exempt from seizure for the satisfaction of liabilities." Tex. Prop.Code, § 42.004(a).

 The transactions are indeed questionable, but that is not enough to deny an exemption. The court cannot determine from this record with any degree of certainty whether nonexempt property *of the debtor* was in fact used to acquire exempt property. The Texas statute clearly contemplates such a finding as an essential element to the disqualification of the claimed exemption. Although the circumstances are suspicious, there is not enough evidence to support a finding that the source of the monies lent to the debtor by his ex-wife and his daughter was the debtor himself and without that finding, an essential element of an action under Section 42.004(a) is missing.

Movants cite a Pennsylvania case for the proposition that where certain badges of fraud appear, exemptions may be denied as a matter of federal bankruptcy law. *In re Roberts*, 81 B.R. 354, 363 (Bankr.W.D.Pa. 1987) ("concealment of assets bars a debtor from exempting same"). The Fifth Circuit has also recently observed, in the context of an objection to a debtor's discharge arising out of impermissible pre-bankruptcy planning, that "... some prebankruptcy planning is appropriate, [but] the wholesale expenditure of non-exempt assets on the eve of bankruptcy, including conversion to

exempt assets (especially where there are liberal state law exemptions), may not be." *Matter of Bowyer*, 916 F.2d 1056, 1060 (5th Cir.1990); *but see Matter of Reed*, 700 F.2d 986, 990 (5th Cir.1983) (holding that pre-bankruptcy conversion of nonexempt assets into exempt assets is not sufficient, standing alone, to deprive a debtor of the exemptions to which he would otherwise be entitled under state law); *In re Whitney*, 107 B.R. 645, 650 (Bankr.D.Minn.1989); *In re Parker*, 118 B.R. 539 (Bankr.S.D.Ohio 1990) (quoting *In re Beckman*, 104 B.R. 866 (Bankr.S.D.Ohio 1989) (holding, in the context of a Section 548 action, that pre-bankruptcy planning permits the debtor to make full use of the exemptions to which he is entitled and that the mere conversion of nonexempt to exempt status on the eve of bankruptcy does not constitute fraud)); *In re Carey*, 96 B.R. 336, 339 (Bankr.W.D. Okla.1989) (holding in a Section 727 action that pre-bankruptcy planning is permissible where the evidence indicates that the debtor's transfers were not made with the intent to hinder, delay or defraud creditors).

 In the absence of a statutory basis for denying a debtor's exemption (such as that afforded by Section 42.004(a) of the Texas Property Code, for example), this court is reluctant to conclude that exemption claims can be disallowed solely based on a theory of impermissible pre-bankruptcy planning.[6] There of course is great appeal to preventing a perceived malfeasor from enjoying the fruits of his or her malfeasance, especially when the appeal is made to a court sitting in equity. *See Pepper v. Litton*, 308 U.S. 295, 307, 308, 60 S.Ct. 238, 245–46, 246, 84 L.Ed. 281 (1939). Nonetheless, bankruptcy courts should not be seduced into such a course of action, for two reasons.

Firstly, such an attack undermines existing state law property entitlements, not in service to the supremacy of a federal enact-

---

**6.** Actually, *Roberts* stands for a much narrower proposition than that suggested by Movants. If a debtor conceals an asset *which the trustee then recovers,* the debtor may not then amend his or her schedules to claim the discovered and recovered property as exempt. *In re Roberts*, 81

B.R. at 362–63; *see* 11 U.S.C. §§ 522(g), 542(a). All of the exempt property in question here was disclosed by the debtor from the beginning of the case and claimed as exempt (albeit obliquely), taking this case out of the *Roberts* rule.

ment but merely in an effort to "do the right thing," as it were. A creditor could eliminate exemptions for "improper conduct" in bankruptcy court notwithstanding the lack of a federal statutory basis, and thereby deprive the debtor of the very state law exemptions which he or she would enjoy absent bankruptcy (assuming of course that an action under Section 42.-004(a) were not available). Even the Bankruptcy Code itself contemplates the *preservation* of those state law exemption entitlements. 11 U.S.C. § 522(b)(2)(A); *see In re Komet,* 104 B.R. 799, 809 (Bankr.W.D.Tex. 1989). Federal courts should be loathe to interfere with such entitlements absent specific congressional authorization. "In exercising their equitable powers federal courts must recognize 'the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 112, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (quoting *Stefanelli v. Minard,* 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951); *see United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) (Section 105 does not give to bankruptcy judges a "roving commission to do equity").

■ Secondly, the thrust of the Movant's appeal is at bottom an attack on the debtor's right to discharge, albeit couched in terms of objections to exemptions. The Bankruptcy Code and Rules provide specific procedures for challenging entitlement to discharge. If such procedures are not followed, the challenge may be barred for all time. 11 U.S.C. §§ 727(a), 524(a); Bankr.R. 4004. Drafters of the Code were vigilant in closely regulating attacks on debtors' discharge. Instituting a case law procedure such as that suggested here would create a wholly separate, unregulated alternative to the statutory procedures for objecting to discharge which this court believes would be inconsistent with clearly expressed congressional intentions. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess 128 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. This court prefers not to become an equity ombudsman. The course of action suggested by the Movants must accordingly be rejected.

■ Even were such an action to be available, however, it would still fail, for the Movants have failed to sustain their burden of proving that the debtor exceeded the permissible limits on prebankruptcy planning, at least with respect to the watch and the Suburban, although just what is an allowable amount of prebankruptcy planning is still an open question in this circuit. *See In re Bowyer, supra.* By pledging his exempt property to his ex-wife and his daughter in exchange for loans, the debtor at best borrowed against what he thought was exempt property (his furniture, fixtures and equipment) and paid down his note on the Suburban. Unless it were shown that the monies he borrowed from his ex-wife and his daughter were actually his own monies, there can be no intent derived from pledging what was thought to be *exempt* property to pay down a debt on *other* exempt property. As we have seen, Movants have not been able to prove up the source of the funds loaned to the debtor by his ex-wife and his daughter. "[T]he objecting party has the burden of proving that the exemptions are not properly claimed." Bankr.Rule 4003(c). *In re Starns,* 52 B.R. 405, 409 (D.C.Tex.1985).

Accordingly, the exemption claims to the Rolex watch and the 1985 Chevrolet Suburban must withstand the creditors' challenges on these counts.

5. The individual retirement account.

The Movants allege that the debtor rolled over a nonexempt Keogh plan into an exempt IRA plan just eight days prior to filing bankruptcy (potentially shielding over $123,000.00 in assets). The analysis under Section 42.004(a) which failed when applied to the Rolex watch and the Chevrolet Suburban takes on new life in the context of this IRA. However, the exemption claim to the IRA is problematic in its own right as well. We turn first to whether the IRA can even be claimed as exempt at all. We then examine whether, assuming the IRA otherwise qualified for exemption, the

debtor's conduct prevents him from claiming it as exempt.

■ Individual retirement accounts may be exempt under the Texas Property Code. Tex.Prop.Code § 42.0021(a); *In re Felts*, 114 B.R. 131, 134 (Bankr.W.D.Tex. 1990); *In re Komet*, 104 B.R. 799, 816 (Bankr.W.D.Tex.1989). The Movants assert that the debtor's Keogh plan did not comply with certain provisions of the Internal Revenue Code, as amended by the Tax Reform Act of 1986 so that the IRA does not "qualify under applicable provisions of the Internal Revenue Code of 1986." 26 U.S.C. § 408(d)(3)(A)(ii); *see* I.R.S. Notice 87–57, 1987–2 C.B. 117 (plan must be qualified prior to termination in order to retain qualified status); Tex.Prop.Code § 42.0021(a).

The Movants' assertion that the plan does not conform to certain provision of the Tax Reform Act of 1986 is supported by the record. The debtor produced a copy of what he maintained was the predecessor Keogh plan at his deposition. That copy was introduced into evidence at trial and again identified by the debtor as the plan which was rolled over into the IRA shortly before bankruptcy.[7] Movants then directed the court's attention to revenue rulings and tax provisions of which this court justifiably may take judicial notice. Debtor has *presented no evidence* that the plan comports with the Internal Revenue Code. A comparison of the plan with those provisions confirms that the plan was not qualified.

■ The following instances demonstrate that the debtor's plan was not amended to comply with the provisions of the Internal Revenue Code and the Tax Reform Act of 1986.[8]

1) Section 3.02 of the plan permits employee contributions to the plan. This section has not been amended to provide for the actual contribution percentage test, which test has became effective for this plan on January 1, 1990. 26 U.S.C. § 401(m).

2) Section 3.04(m)(1) of the plan has not been amended to include all employee contributions, rather than a portion of such contributions, as annual additions. This change became effective January 1, 1987. 26 U.S.C. § 415(c)(2).

3) Section 5.03(b) of the plan has not been amended to specify, for example, whether life expectancies of the participants and/or his spouse are to be recalculated. 26 U.S.C. § 401(a)(9).

The Tax Reform Act of 1986 ("TRA") provides a delayed date by which qualified plans must be amended to conform to changes in the qualification requirements. Plans that are terminated must be amended no later than the date of termination to comply with those provisions of TRA that have become effective with respect to the plan as of the date of the termination. I.R.S. Notice 87–57, 1987–2 C.B. 117; 26 U.S.C. 408 § (d)(3)(A)(ii).

■ This court has previously ruled that ERISA retirement plans may be claimed as exempt under the "other federal law" provision of Section 522(b)(2)(A). *In re Komet*, 104 B.R. 799, 816 (Bankr.W.D. Tex.1989). IRA's do not fall under the protection of the federal statute, however. 29 U.S.C. §§ 1003(a), 1056(d)(1); 29 C.F.R. § 2510.3–2(d)(1); *In re Laxson*, 102 B.R. 85, 89 (Bankr.N.D.Tex.1989). Therefore, unless they are exempt under Texas' exemption statute, they may not be claimed by the debtor under Section 522(b)(2)(A).

---

**7.** While debtor's counsel attempted to impeach the authenticity of the document (by suggesting that the original signed version was available somewhere), that effort fails. Apparently, State Farm national offices draft "proposed" Keogh plans for their independently owned offices in accordance with then applicable law. It does not require its offices to adopt these plans, however, nor does it "administer" them. It is up to the local office to formally adopt the plan, and to amend it as well. The local office is therefore the logical locale for the operative plan,

and the debtor here is the logical person to have the most recent version of his own plan which only he himself could have adopted. The court safely assumes that the debtor was honest and forthright both in his deposition and in his testimony at trial.

**8.** This listing is merely illustrative and in no way reflects all the potential inconsistencies between this plan and the Internal Revenue Code.

Section 42.0021 of the Texas Property Code creates such an exemption for IRA's "unless the ... account does not qualify under the applicable provisions of the Internal Revenue Code of 1986." Tex.Prop.Code § 42.0021(a). The Internal Revenue Code, in turn, prohibits qualification to an IRA rolled over from a non-qualified plan. 26 U.S.C. § 408(d)(3)(A)(ii); I.R.S. Notice 87–57, 1987–2 C.B. 117. Because the predecessor Keogh plan here in question was not qualified, neither is this IRA.[9] Therefore, it is cannot be claimed as exempt under the Texas statute and so is not available for exemption in this bankruptcy case.

Even were the IRA exempt under Section 42.0021, however, the debtor's conduct with respect to that plan, viewed in the overall context of this case, would deprive him of the benefits of that IRA by virtue of Tex.Prop.Code § 42.004, because the debtor has used property not exempt to acquire eligible personal property with the intent to hinder or delay interested persons (i.e., creditors) from obtaining that to which they may be entitled. Tex.Prop.Code, § 42.004(a).

A close analysis of the facts of this case yields a pattern of conduct by the debtor reflecting an effort to delay and hinder, if not to defraud, his creditors. Debtor originally filed this case in Austin, Texas when the debtor resided and conducted his business in the San Antonio area. This tactic appears to have been employed in an effort to discourage creditors in the San Antonio area from attending the first meeting of creditors, from reviewing the bankruptcy schedules and to otherwise discourage participation in the case due to the resulting cost and inconvenience of having to travel to Austin to protect their rights. The record reveals no legitimate reason for filing the case in Austin other than the bare legal fact that the law does not prohibit filing in that division. Pub.L. 100–702, Title X, § 1001(a), Nov. 19, 1988, 102 Stat. 4664 (repealing 28 U.S.C. § 1393, which prescribed divisional venue); *See Jordan v. Bowman Apple Products Co., Inc.,* 728 F.Supp. 409, 418–19 (W.D.Va.1990).

The original schedules filed in this case were inadequate in the detail of property claimed as exempt. The schedules were subsequently amended only after the trustee specifically objected to them, for the first time disclosing other assets and valuations. These assets (e.g., the Rolex watch, the furniture, fixtures, equipment and the insurance policies) would, in all likelihood, never have been disclosed but for these objections.

The debtor "borrowed" $19,000.00 from insiders just a few days prior to filing bankruptcy, secured by a combination of exempt (watch) and nonexempt (furniture, fixtures and equipment) property. Debtor acknowledges that he does not know where his ex-wife and daughter came up with this money. The overall activity has the appearance of an attempt to place liens in favor of family members on a majority of his property just days before filing bankruptcy, to discourage his creditors from pursuing those assets. As noted earlier, it cannot be determined with specificity whether nonexempt assets were converted into exempt assets with respect to the loans. However, there were a multitude of questionable transactions just days before

---

**9.** The court here expresses its grave reservations about embarking on this entire inquiry. As observed previously in *Komet,* one of the reasons this court believes the state exemption statute for retirement plans to be pre-empted is the direct conflict with federal tax law invariably instigated by a creditor's objection to a claim of exemption under this statute on grounds that the plan in question is not qualified under the Internal Revenue Code. *In re Komet,* 104 B.R. 799, 804–05 (Bankr.W.D.Tex.1989) (Clark, B.J.); *but see In re Volpe,* 100 B.R. 840, 855 (Bankr.W. D.Tex.1989) (Kelly, B.J.), *aff'd,* 120 B.R. 843 (W.D.Tex.1990) (state statute not preempted by ERISA). Creditors do not have standing under the tax code to challenge the tax qualification of a plan. 26 U.S.C. § 7476. Because tax qualification is an essential element of the state exemption, Texas has in effect granted standing in direct defiance of federal law. What is more, nothing in the state statute itself calls for notice of the challenge to tax qualification to the Internal Revenue Service or even to a retirement plan trustee or administrator, notwithstanding the devastating consequences of an adverse finding to other members of the plan (who are *also* not made parties to the exemption fight). No party here has directly attacked the statute on this ground, however, so the court elects not to reach the issue.

the bankruptcy filing, none of which might take on any importance in isolation but which, viewed in the aggregate, reveal a pattern.

Debtor's conduct with respect to the Keogh plan and the IRA plan fits into that pattern. The court believes that the debtor's conduct with regard to the funds from the Keogh plan, when viewed against this pattern, demonstrates an attempt to delay and hinder his creditors by converting his nonexempt Keogh plan [10] into what he hoped was an exempt IRA plan just eight days prior to the filing bankruptcy. Here, the court does not face the same problem tracing whether the property converted belonged to the debtor. The Keogh plan was clearly the debtor's property. The court concludes that, even were the IRA held to be otherwise exempt, it would nonetheless be constrained to conclude that the debtor created that exemption out of his nonexempt property, with intent to hinder and delay his creditors, in violation of Section 42.004(a) of the Texas Property Code. *Cf. Matter of Bowyer*, 916 F.2d at 1060 (pre-bankruptcy planning with intent to hinder or delay or creditors may result in loss of discharge).[11]

### 6. The insurance policies

■ Finally, the court is left to determine the proper valuation to be put on insurance policy number 517–9573. Movants assert the termination value should be used ($9,700.00). *In re Brothers*, 94 B.R. 82 (Bankr.N.D.Tex.1988). Debtor asserts the cash surrender value should be used, which he contends is less than $1,300.00. Debtor asserts that the wording of the exemption statute is in terms of "cash surrender value" and that, therefore his cash surrender value should be used.

"... [C]ash surrender values are more in the nature of an investment, they are not paid 'under' the policy, rather they are paid to the owner if the policy is cancelled, or to the beneficiary in the total of proceeds paid. Cash surrender values are available to the debtor at any time he or she might wish to terminate the insurance, or convert the funds to paid up insurance, therefore, they are also available to the Trustee." *In re Brothers*, 94 B.R. at 85. The evidence establishes that Mr. Swift, at any time, could have received the $9,700.00 in issue by terminating the policy. Swift testified that there really is not a difference between the cash surrender value and the termination value. A termination value represents essentially the same thing as does a cash surrender value, namely the funds immediately available to Mr. Swift. Accordingly, the $9,700.00 valuation is to be included in the debtor's exempt personal property for valuation purposes.

### D. *Debtor's motion to avoid judicial liens against debtor's homestead.*

■ The debtor also seeks to avoid, pursuant to Section 522(f), the judicial liens filed by both BankSa and GNA against his homestead. All parties agree that the real property in issue is, in fact, the debtor's homestead. Generally, property occupied as a homestead cannot be subjected to the satisfaction of debts or of claims against the homestead owner. *See Englander Co. v. Kennedy*, 424 S.W.2d 305 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.); *see Kunkel v. Kunkel*, 515 S.W.2d 941 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.); Tex. Const., art. XVI, §§ 50–52; Tex.Prop.Code, § 41.002(a).

The BankSa and GNA are claiming that the divorce decree granted an interest in the homestead to Mary Swift and that this

---

**10.** As the court is called upon in this analysis to disallow a state exemption under state law, the court tests the validity of the exemption under the state law in question, i.e., Section 42.-0021(a), recognizing full well the resulting conflict with Section 1056(d)(1) of Title 29, which this court has previously held to create a federal exemption for such plans *notwithstanding* their lack of tax qualification. *See In re Komet*, 104 B.R. 799, 803–04 (Bankr.W.D.Tex.1989). That conflict further underlines the problems posed

by states' forays into territory already staked out by federal law. *Id.*

**11.** Because the resolution of this issue turns on an interpretation of Section 42.004(a), the court is not called upon to reach the yet-unanswered question of what level of pre-bankruptcy planning might be permissible. That difficult conundrum must be left for another day.

interest can be attached as and when the subject property is ever sold. The BankSa and GNA acknowledge that they cannot impair the *debtor's* exemption under Texas homestead law but assert that they should be permitted to retain their judgment lien against Mary Swift's interest in any equity that might be available as and when the homestead property is ever sold. Essentially, BankSa and GNA contend that debtor's exemption can only extend to property retained after the divorce, not to the interest conveyed to Mary Swift.[12] BankSa and GNA point out that 11 U.S.C. § 522(f) provides that "the debtor may avoid the fixing of a lien on an interest *of the debtor* in property...." 11 U.S.C. § 522(f). The BankSa and GNA assert that the debtor cannot avoid the fixing of their judicial liens on that portion of the homestead property conveyed to Mary Swift by the divorce decree.

Debtor responds that the entire homestead is exempt by virtue of the divorce decree, relying specifically on paragraph 15 of the decree, which provides, in relevant part, that David Swift is awarded "the real property and improvements, including all right title and interest in and to said property ... at 6327 Mallard point ... subject to *the security interest awarded* Petitioner [Mary Swift]...." Thus, argues Debtor, Mary Swift simply acquired a lien on the property and nothing more. His interest, therefore, extends to the entire property and the liens which impair that interest can be avoided under Section 522(f).

■ This dispute can be easily resolved by a reasonable construction of the divorce decree. There is nothing in the divorce decree that indicates that any form of interest was conveyed to Mary Swift. She was instead awarded a lien to secure repayment of a property settlement which *repre-*

*sented* her marital interest in the homestead. "[I]n a divorce action a lien may be placed upon a spouse's real property homestead to secure the payment of the amount awarded to the other spouse for that other spouse's homestead interest." *Lettieri v. Lettieri*, 654 S.W.2d 554, 559 (Tex.App.—Ft. Worth 1983, writ dism'd).

■ Mary Swift's lien is not itself protected by David Swift's homestead exemption. However, it is an enforceable lien against that homestead under Texas law. *Lettieri*, 654 S.W.2d at 559 (holding that a party can foreclose on lien without violating homestead exemption).[13]

■ BankSa, GNA and Mary Swift all acquired liens on the property. "[T]he Texas statutes and constitutional provisions respecting homestead specify the types of indebtedness for which there may be a valid lien on the homestead. Liens for any other purpose are invalid." *Matter of Daves*, 770 F.2d 1363, 1370 (5th Cir.1985). The motion before the court requests only avoidance of BankSa and GNA's liens. The debtor's motion as to the creditors' liens, pursuant to 11 U.S.C. § 522(f), is granted as to the debtor's interest in the homestead, which extends to that portion encumbered by Mary Swift's lien interest as well.

■ The fact that the debtor's entire homestead property is exempt from the attachment of BankSa and GNA's liens in no way affects the status of Mary Swift's lien on this property. What is more, the court need not decide here whether BankSa and GNA (or other creditors of Mary Swift, for that matter) may attach their liens to her *lien interest*, because that issue is not before the court. She is not a debtor in this bankruptcy nor has she been joined as a party in interest. She would be a neces-

12. By the terms of the divorce decree, Mary Swift was to receive $91,250.00, less $8,750.00, out of either the sale of property located at 12521 Nacogdoches Road, San Antonio, Texas or if such sale failed to realize such amounts then any difference owing was to be paid out of the sale of property at 6327 Mallard Point (the debtor's homestead property).

13. Not before the court is whether the lien would be enforceable under federal bankruptcy law were it the target of a lien avoidance by the debtor. *See Farrey v. Sanderfoot (In re Sanderfoot)*, 899 F.2d 598 (7th Cir.1990), *cert. granted*, — U.S. —, 111 S.Ct. 507, 112 L.Ed.2d 519 (1991) (whether a debtor can avoid an ex-spouse's judicial lien granted in a divorce decree on the debtor's interest in exempt property).

sary party to any claims asserted against her interests in the subject property.[14]

All findings may be construed as conclusions, and vice versa.

Judgment will be entered consistent with this opinion. Movants are requested to submit the appropriate form of order within ten days from the date of entry of this judgment.

---

**14.** The court does note, however, that Mary Swift has in no way waived any of her rights in potential homestead claims that she may assert. Bankruptcy Rule 4003(a) provides that "a dependent of the debtor may file" a list of exempt property. Failure of a dependent to list property as homestead pursuant to Rule 4003(a) does not constitute a waiver of those homestead rights. *See Blake v. Fuller*, 184 S.W.2d 148 (Tex. Civ.App.—Dallas 1944, no writ) (failure of homestead claimant to designate and set aside homestead did not have effect of depriving him of homestead right). Furthermore, time extensions for filing pursuant to Bankruptcy Rule 4003(a) can be extended by the court under Bankruptcy Rule 9006(b).